**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SCOTT L. RENDELMAN,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )  **Case No. 23-CV-3475-SMY** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Scott Rendelman filed a motion under 28 U.S.C. § 2255 to vacate his convictions based on *Counterman v. Colorado,* 600 U.S. 66 (2023) (Doc. 1). Relying on the Supreme Court's holding that the First Amendment requires a subjective understanding of a statement's threatening nature in true-threat cases, he argues the jury instructions in his case were erroneous in that regard. The Government opposes Rendelman's motion (Doc. 12). For the following reasons, Rendelman's motion for habeas relief is **DENIED**.[1]

### Factual and Procedural Background

For many years, Rendelman has been writing threatening letters to prosecutors, judges, and sitting Presidents, resulting in convictions in federal and state courts across the nation. Trial Tr. Vol. 2, p. 360–372.[2] In 2007, a jury in Maryland found him guilty of threatening public

---

[1] The district court is not required to hold an evidentiary hearing on a § 2255 motion if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F.3d 638, 641-642 (citing *United States v. Kovic*, 830 F. 2d 680 (7th Cir. 1987)). Based on its review of the filings, this Court concludes that the issues in this case can be resolved on the existing record; an evidentiary hearing is not necessary.

[2] All references to the trial transcript are from 4:09-CR-40051-SMY.

officials. *United States v. Rendelman*, Case No. RWT-07-0331. Subsequently, he was transferred to a prison in this District, where he continued his pattern of writing threatening letters to the prosecutors and judge in the Maryland case and to the then-sitting President. These actions led to his most recent prosecution. *United States v. Rendelman*, Case No. 4:09-cr-40051-SMY. Following a jury trial, Rendelman was convicted of one count of contempt of court (18 U.S.C. § 401(3)), three counts of retaliating against federal officials (18 U.S.C. § 115(a)(1)(B)), and two counts of threatening the President of the United States (18 U.S.C. § 871). *Id.* He appealed his conviction, and the Seventh Circuit affirmed. *United States v. Rendelman*, 495 F. App'x 727 (7th Cir. 2012).

In 2013, Rendelman filed a motion to vacate under 28 U.S.C. § 2255, which was dismissed. *Rendelman v. United States*, Case No. 3:13-CV-00209-GPM. Following the Supreme Court's *Counterman* decision, Rendelman sought leave to file a successive § 2255 habeas petition. The Seventh Circuit granted him permission for the instant petition. *Rendelman v. United States*, Case No. 23-2896 (7th Cir. Oct. 24, 2023).

## Legal Standard

An action brought under 28 U.S.C. § 2255 represents an attempt to collaterally attack a sentence outside of the traditional avenue of appeal. As such, relief under § 2255 "is available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude or other fundamental defect that resulted in a complete miscarriage of justice. *Blake v. United States,* 723 F.3d 870, 878 (7th Cir. 2013). In other words, § 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Sandoval v. United States,* 574 F.3d 847, 850 (7th Cir. 2009).

## Discussion

In 2023, the United States Supreme Court concluded that the First Amendment requires the Government in a "true-threat" case to prove a defendant had "some subjective understanding of the threatening nature of his statements."  Specifically, a speaker must be aware "that others would regard his statements as 'threatening violence and 'delivers them anyway'".  *Counterman v. Colorado,* 600 U.S. 66, 79 (2023).  As such, a defendant cannot be prosecuted for making threats if the defendant acted with less than reckless *mens rea* in making the threat.  *Id*.

Here, Rendelman asserts that he believed the selected recipients of his communications "would know enough about him to know that his threats were not serious" and that he did not intend to threaten them (Doc. 14).  And relying on *Counterman*, he argues his convictions for retaliating against federal officials in violation of 18 U.S.C. § 115(a)(1)(B) and threatening the President of the United States in violation of 18 U.S.C. § 871 should be vacated because the district court prevented him from arguing "his lack of subjective intent to make true threats against the recipients of his letters."  He also argues that the jury instructions required the jury to find him guilty of making true threats based solely on an objective reasonable person standard "without any regard or consideration of [his] subjective intent."  (Doc. 1, p. 1).

The Government argues that *Counterman* does not apply to Rendelman's convictions for retaliating against federal officials because the offense requires a higher subjective *mens rea* than the *Counterman* recklessness standard, and that *Counterman* has no bearing on the crime of threatening the President.  Alternatively, the Government argues that because the trial record "is replete with overwhelming evidence that Rendelman was at least reckless in making these threatening comments.  The overwhelming evidence would render any instruction error harmless." (Doc. 12, p. 20).

While *Counterman* mandates recklessness as the minimum *mens rea* required for a threat statute to pass First Amendment scrutiny, §115(a)(1)(B) requires intentionally threatening conduct, which exceeds the *Counterman* standard.  As the District Court for the Middle District of Florida recently noted in *United States v. Gilmore*, No. 8:23-CR-00151-CEH-JSS, 2024 WL 726431, (M.D. Fla. Feb. 22, 2024):

> [W]hereas the Colorado statute contained no *mens rea* component, section 115(a)(1)(B) includes specific intent… [S]ection 115 does not apply an objective standard, but instead has a specific scienter requirement, and therefore it differs from the Colorado statute… Thus, the problem that arose in *Counterman* does not exist with the statute here, and *Counterman* is inapplicable.  *Id.* at 4-5.

This Court finds the decision in *Gilmore* to be well reasoned, persuasive authority; *Counterman* has no application in this case and does not require vacation of Rendelman's convictions under either 18 U.S.C.§ 115(b) or 18 U.S.C. § 871.

To convict Rendelman on Counts 2, 3 and 4 for violating 18 U.S.C.§ 115(b), the jury instructions given at trial required the jury to find both that he made a true threat to assault, kidnap, or murder, and did so with the intent to retaliate against a federal official. Trial Tr. Vol. 3, p. 464.  The jury was also instructed on the definition of true threat:

> A 'true threat' means a serious threat as distinguished from idle or careless talk, or something said in a careless manner.  A statement is a true threat if it was made under such circumstances that a reasonable person would construe it as a serious expression of an intent to commit an unlawful violence to a particular individual.  It is not necessary that anyone actually intended to carry out the threat."  Trial Tr. Vol. 3, pp. 466–477.

Although the instruction did not explicitly contain a subjective understanding requirement, the statute inherently requires a *mens rea* higher than or equal to recklessness.  And because one cannot intentionally retaliate against someone by negligently or recklessly threatening them, the jury necessarily found that he intended his communications to be threatening, which surpasses *Counterman's mens rea* requirement.  *See* 600 U.S. at 81

(discussing specific intent crimes, noting that their *mens rea* is "equivalent to purpose or knowledge" and holding those are greater *mens reus* than required for First Amendment purposes in the context of threat prosecutions).  Thus, this Court finds no error with respect to the jury instructions.

Rendelman also contends that the district court's prohibition against him arguing that he lacked subjective intent to make true threats against the recipients of his letters runs afoul of *Counterman*.  But that argument would not have been supported by the substantial evidence adduced during trial, including Rendelman's own testimony, which was also sufficient to cross the *Counterman* recklessness threshold.

Rendelman testified that he knew his mail was being screened and knew the BOP screeners would perceive his communications as threatening.  Specifically, he testified, "As far as I knew when I [wrote] those letters and they see that there are threats in them, those letters don't go out.  He "assume[d]" the recipients were not getting the letters based on BOP screening for threatening letters.  *Id.*, p. 405.  Rendelman himself used the word "threat" to characterize the content of his letters:

- "Yes, one-fifth is a threat to the president and one-fifth is a threat to Judge Titus." *Id.*, pp. 424-25 (characterizing the content of a five-line letter).

- "Well, even the threats to the president contain threats to other people.  Many times there are threats in letters that are not directed to the recipient." *Id.*, p. 425.

- "My intention is to show that I get worse and worse, the threats get worse and worse." *Id.*, p. 433.

- "As far as I knew … they see that there are threats in them, those letters don't go out." *Id.*, p. 403-04.

Rendelman discussed his purpose in sending the threatening letters:

The reason I'm writing these letters is to show them their system hasn't rehabilitated me." *Id.*, p. 405.  "The intention is to show that I get worse and worse, the threats get

worse and worse. Those are, those are like the most horrible things I can think of. And, yes, I put them in there." *Id.*, p. 433.

Additionally, he acknowledged that the recipients of his letters were reasonable in treating them as a threat. Trial Tr. Vol. 3, pp. 410-11.

During closing argument, Rendelman acknowledged that Gov. Exh. 1 (the letter giving rise to Count 6) contained a threat but argued that threats conditioned on a future occurrence were not legally sufficient. *Id.*, p. 484. He made the same argument with respect to the presidential threat in Gov. Exh. 2 (the letter giving rise to Count 5), referring to the letter as "the same threat." *Id.*, pp. 484-85.

In sum, the Court finds that *Counterman* has no effect on Rendelman's convictions under 18 U.S.C. § 115(a)(1)(B)—whether based on the jury instructions given or the district court prohibiting him from arguing that he lacked the subjective intent to make true threats.

The Court now turns to Rendelman's convictions for threatening the President in violation of 18 U.S.C. § 871. The statute provides that "[w]hoever knowingly and willfully . . . makes any such threat against the President . . . shall be fined under this title or imprisoned . . . ." 18 U.S.C. § 871. The Seventh Circuit squarely addressed the *mens rea* required under § 871 in *United States v. Hoffman*, 806 F.2d 703, 707-08 (7th Cir. 1986). The Court first noted that the statute must only reach communications that are objectively threatening: communications that "a reasonable person would foresee that the statement would be interpreted by those to whom the make communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President." *Id.* at 707 (quoting *Roy v. United States*, 416 F.2d 874, 877 (9th Cir. 1969)). It then held that a conviction under § 871 requires "proof that the speaker intended his statement to be taken as a threat." *Hoffman*, 806 F.2d at 707 (quoting *Rogers v. United States*, 422 U.S. 35, 48 (1975) (Marshall, J., concurring).

As § 871 requires *willfully threatening conduct* – not intentionally threatening conduct – the *Hoffman* standards are left undisturbed by *Counterman*.  Consistent with those standards, the district court instructed the jury that, to find Rendelman guilty of threatening the President, they must find that he knowingly and willfully made a true threat against the President of the United States.  Jury Instr., at p. 16.  He further instructed them that an act is done willfully "if it is a volitional act done by one who knows, or should reasonably be aware, that his conduct is wrongful . . . one intentionally violated a known legal duty", and that knowingly means that "the defendant realized what he was doing and was aware of the nature of his conduct . . . ."  *Id.* at 16, 17 and 22.  These instructions are aligned with *Counterman*'s *mens rea* requirement that "a speaker is aware 'that others would regard his statements as 'threatening violence and 'delivers them anyway.'"  *Counterman*, 600 U.S. 66, 79.  The Court presumes the jury followed its instructions.  *United States v. Pierson*, 89 F.4th 976, 986 (7th Cir. 2024).

<u>Conclusion</u>

For the foregoing reasons, Scott L. Rendelman's Petition for relief under 28 U.S.C. § 2255 is **DENIED**.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability.  *Miller-El v. Cockrell,* 537 U.S. 322, 335 (2003).  A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.  *Id.* at 336; *White v. United States*, 745 F.3d 834, 835 (7th Cir. 2014).  Under this standard, Rendelman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

This Court has determined that Rendelman has not stated any grounds for relief under § 2255 and that reasonable jurists would not find that conclusion debatable or wrong. Thus, Rendelman has not made a "substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

**IT IS SO ORDERED.**

**DATED:  June 21, 2024**

**STACI M. YANDLE**
**United States District Judge**